```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
Ruixue Fan,

                Plaintiff,
                                              MEMORANDUM & ORDER
        - against -
                                              19 Civ. 1647 (NRB)

US Zhimingde International Group,
LLC, et al.,

                Defendants.
----------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

In this action, plaintiff seeks to assert claims against defendant for violations of Sections 5(a) and 5(c) of the Securities Act of 1933; Section 10(b) of the Securities Exchange Act of 1934, and SEC Rules 10b-5 and 12g-2, promulgated thereunder; Section 301(b) of the Federal Food, Drug, and Cosmetic Act; Section 4 of the Fair Packaging and Labeling Act; and Section 43(a) of the Lanham Act. Plaintiff also seeks to assert claims under New York state law. Before the Court is defendant US Zhimingde International Group, LLC's motion to dismiss the plaintiff's complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1), (3) and (6). For the following reasons, defendant's motion is granted.

## I.  Background

In the summer of 2014, Yuan Zhu and Yinling Zeng[1] approached plaintiff Ruixue Fan and promoted herbal supplement products manufactured and marketed by defendant.[2]  Compl. (ECF No. 2) ¶ 15.  In promoting defendant's herbal supplement products, Zhu and Zeng gave plaintiff brochures introducing the benefits of the products.  Id. at ¶ 16.  The brochures stated in Chinese that the products had been approved by the U.S. Food and Drug Administration and the U.S. Department of Health and Human Services had issued a Certificate of Free Sale for the products.  Id. at ¶ 17.  On August 16, 2014, plaintiff purchased from defendant $ 4,000 worth of its herbal supplement products for her own use.  Id. at ¶ 22.

In reliance on Zhu and Zeng's statements regarding the prospect of defendant's herbal supplement products, plaintiff electronically signed an investment agreement[3] with defendant in August 2014 and invested $484,925 in defendant over the period between August 19 and October 8, 2014.[4]  Id. at ¶¶ 25-26, 27, 29.

---

[1]  Zhu and Zeng have not been named as defendants in this action.
[2]  Plaintiff commenced this action, seeking to assert claims against defendant US Zhimingde International Group, LLC, and other individuals and entities that are allegedly within the larger Zhimingde corporate family.  However, defendant US Zhimingde Group, LLC is the only one served by plaintiff.  All other defendants have been dismissed from this action for the plaintiff's failure to timely serve them.  See ECF No. 33.
[3]  Despite an investment purportedly made under this agreement is one of the primary subjects of this litigation, plaintiff has not attached a copy of the agreement to the Complaint.
[4]  It is unclear from the Complaint which entity plaintiff allegedly invested in.  In paragraph 27, plaintiff alleges that she entered into an investment agreement with "Defendants."  In contrast, in paragraph 29, she alleges that she made the investment in defendant "US Zhimingde International Group, LLC."  Drawing an inference in plaintiff's favor, the Court will treat

2

Plaintiff financed the investment by obtaining a $ 400,000 loan in home equity line credit. Id. at ¶ 28.

In October 2014, plaintiff attended a two-day conference in Beijing, China that was hosted by defendant and other Zhimingde-named companies. Id. at ¶ 30. At the conference, defendant and those companies demonstrated their products that were then currently under development. Id. at ¶ 31. On the second day of the conference, plaintiff was invited to a private meeting with only few other purported investors and Zhongquan Zou who represented himself as the president of defendant and another entity within the larger Zhimingde corporate family.[5] Id. at ¶ 34. At this meeting, plaintiff expressed her concern that she had not received any return on her investment. Id. at ¶ 35. Zou offered in response that she would receive 685,811 shares of defendant after it successfully went public in the U.S. market. Id. at ¶ 36.

Plaintiff subsequently made some information requests and accounting demands regarding her investment, but defendant did not respond in any manner. Id. at ¶ 37. In April 2016, when plaintiff made a request for a copy of the investment agreement between herself and defendant, defendant disabled her online account and denied her access to any online record. Id. at ¶ 38. Eventually,

---

the Complaint as alleging that plaintiff made an investment in defendant US Zhimingde Group, LLC.
    [5]    Zou was initially named as a defendant in this action but was dismissed after plaintiff failed to timely serve him. See ECF No. 33.

3

plaintiff sold her house in New Jersey to satisfy the loan she obtained for making the investment. Id. at ¶ 42.

Plaintiff commenced this action by filing a complaint on February 22, 2019 ("Complaint"). See ECF No. 2. By letter dated May 15, 2019, the Court informed plaintiff's counsel that the Court would dismiss without prejudice the claims asserted against unserved defendants unless plaintiff serves them by May 24, 2019, which was the deadline to serve those defendants under Federal Rule of Civil Procedure 4(m). See ECF No. 18. Three months past the deadline, on August 22, 2019, plaintiff's counsel submitted a request for an extension of time to serve the unserved defendants, see ECF No. 30, and the Court granted a final 120-day extension. See ECF No. 32. Plaintiff failed to file affidavits of service for the unserved defendants by the final deadline, and consequently, on December 23, 2019, the Complaint was dismissed without prejudice against all defendants other than US Zhimingde International Group, LLC. See ECF No. 33. Now before the Court is a motion by US Zhimingde International Group, LLC, the sole remaining defendant, to dismiss the Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1), (3) and (6). See ECF No. 16.

## II. <u>Discussion</u>

A. **Legal Standards**

On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. <u>City of Providence v. BATS Glob. Mkts., Inc.</u>, 878 F.3d 36, 48 (2d Cir. 2017). Still, "[f]actual allegations must be enough to raise a right of relief above the speculative level," and plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

B. **Analysis**

1. <u>Securities Act of 1933 and Securities Exchange Act of 1934</u>

   a) **Applicability of Federal Securities Law**

At the outset, the Court notes that it is not clear from the Complaint whether the plaintiff's alleged investment in defendant qualifies as a "security" covered by the federal securities law. This uncertainty primarily stems from the plaintiff's failure to proffer any terms of her alleged investment.[6] The Complaint only contains a bare recital that plaintiff "invested $484,925.00" in defendant. Compl. ¶ 29. The allegation that defendant offered

---

[6] Consistent with her position in the Complaint that defendant has denied her access to any online record regarding her investment, plaintiff has not submitted the investment agreement, the terms of which presumably would have clarified the nature of her investment. Apparently, plaintiff had not printed out any of the documents related to the investment before her online account was deactivated.

5

plaintiff "685,811 shares" of defendant perhaps in lieu of a cash return on her investment provides little clarity on the initial terms of the investment because the alleged offer of securities was made months after the investment had been fully made. See Compl. ¶¶ 29, 36. Moreover, plaintiff alleges that defendant "<u>further</u> offered" those shares when plaintiff complained about not having received any return on her investment, suggesting that it was an offer to create a substituted contract and the offered shares were not part of the original agreement between the parties regarding the investment. Id. at ¶ 36 (emphasis added). In sum, plaintiff has failed to plead sufficient facts to establish that her alleged investment in defendant was a "security" covered by the federal securities law. Therefore, the claims plaintiff seeks to assert under the federal securities law in Counts I, II and VI of the Complaint are dismissed.[7]

b) **Alternative Grounds for Dismissal**

Even were we to assume (in the absence of any evidence) that she acquired some shares of defendant's stock through the investment and those shares constituted "securities" under the

---

[7] In her motion papers, plaintiff contends that "[d]efendant announced or advertised about transferring their share to the investors" and was already a public company at the time of her investment. Pl.'s Opp'n (ECF No. 20) at 6. Plaintiff obviously advances these contentions as part of an endeavor to argue for the application of federal securities law to her alleged investment despite the total lack of evidence to support that claim. These unsubstantiated contentions are insufficient to establish that the plaintiff's alleged investment in defendant constituted a "security" covered by the federal securities law.

federal securities law, see Pl.'s Opp'n at 5-6, each of the plaintiff's purported claims under the federal securities law in Counts I, II and VI of the Complaint should still be dismissed for failure to state a claim or untimeliness.

(1) Securities Exchange Act of 1934

In Count I of the Complaint, plaintiff endeavors to assert a claim under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, a regulation promulgated by the U.S. Securities and Exchange Commission ("SEC") thereunder. To plead a securities fraud claim under Section 10(b) of the Exchange Act and Rule 10b-5, plaintiff must allege the following elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 37-38 (2011).

Setting aside the problem of plaintiff's failure to plead any purchase or sale of a "security" as we just discussed, plaintiff has also failed to adequately plead the economic loss element. The only allegation in the Complaint that can fairly be read as describing the loss underlying the plaintiff's purported securities fraud claim is that the alleged misstatements by defendant caused her "to purchase . . . [defendant's] stock at

inflated prices." Compl. ¶ 51. This allegation, however, is insufficient to plead the economic loss element of a claim under Section 10(b) of the Exchange Act and Rule 10b-5. <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 346-47 (2005). The Complaint does not provide any information—such as the number of shares plaintiff acquired, the per-share price of defendant's stock at the time of the investment, and the differential between that price and its current per-share price—that would have allowed us to infer that plaintiff suffered a loss even if she had engaged in a stock transaction. Given the absence of allegations suggesting any loss other than the overpayment for defendants' stock, plaintiff has failed to adequately plead any economic loss that can sustain a securities fraud claim. Cf. <u>Acticon AG v. China North East Petroleum Holdings Ltd.</u>, 692 F.3d 34, 40 (2d Cir. 2012) ("Acticon satisfies the pleading requirement of <u>Dura</u> because it has alleged something more than the mere fact that it purchased NEP shares at an inflated price; specifically, it alleges that the price of NEP stock dropped after the alleged fraud became known.").

The plaintiff's endeavor to plead the economic loss element with the allegation that she had to sell her house at a price lower than what it would have been worth had she kept it as a result of making an investment in defendant fails to cure the defect of her pleading. Even assuming that this alleged economic injury satisfies the economic loss element of a securities fraud claim,

8

plaintiff still fails to plead the loss causation element. Loss causation is "the proximate causal link between the alleged misconduct and the plaintiff's economic harm." ATSI Comm., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 106 (2d Cir. 2007). "A misrepresentation is the proximate cause of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations." In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d 501, 513 (2d Cir. 2010). The alleged misrepresentations and omissions by defendant pertained only to its herbal supplement products, which had absolutely no bearing on the price of plaintiff's house.

In short, plaintiff has failed to state a claim under Section 10(b) of the Exchange Act and SEC Rule 10b-5. Therefore, the Court dismisses Count I of the Complaint.

### (2) Securities Act of 1933

In Count II of the Complaint, plaintiff seeks to assert a claim under Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"). Section 12(a)(1) of the Securities Act provides a private right of action for violations of those Sections. However, Section 13 of the same Act provides that "[i]n no event shall any [] action be brought to enforce a liability created under . . . section 12(a)(1) more than three years after the security was bona fide offered to the public." The three-year limitations period in Section 13 is a statute of repose. CalPERS

9

v. ANZ Securities, Inc., 137 S. Ct. 2042, 2049-50 (2017). Accordingly, the three-year period in Section 13 creates "an absolute bar on a defendant's temporal liability" and is "not subject to equitable tolling." Id. at 2050-51 (internal citation omitted); see also Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co., Inc., 32 F.3d 697, 704 (2d Cir. 1994) ("The three-year period is an absolute limitation which applies whether or not the investor could have discovered the violation."). The Second Circuit has concluded that, for purposes of Section 13, a "bona fide offer" is made when "the stock really and truly (genuinely) [is] being offered to the public." P. Stolz Family Partnership L.P. v. Daum, 355 F.3d 92, 99 (2d Cir. 2004).

Plaintiff alleges that she made the investment at issue over the period between August 19, 2014 and October 8, 2014. Compl. ¶ 29. Plaintiff filed this lawsuit on February 21, 2019, see ECF No. 1, more than 3 years after the closing of the alleged investment.[8] Accordingly, the claim plaintiff seeks to assert in Count II is time-barred, and the Court dismisses Count II of the Complaint with prejudice.

---

[8] The Court further notes that this action filed more than 3 years after the alleged offer of shares in defendant's stock was made by the purported president of defendant, Zou. See Compl. ¶ 36.

10

### (3) 17 C.F.R. § 240.12g-2

In Count VI of the Complaint, plaintiff seeks to assert a claim under the Exchange Act[9] for violations of SEC Rule 12g-2, codified under 17 C.F.R. § 240.12g-2. Plaintiff's purported claim in Count VI fails because, among the regulations promulgated by the SEC, "Rule 10b-5 provides the only private right of action for securities litigation, and the Supreme Court has refused to imply private rights of action from any other provision of the securities laws." Obal v. Deutsche Bank Nat'l Trust Co., No. 14 Civ. 2463, 2015 WL 631404, at *4 (S.D.N.Y. Feb. 13, 2015)(internal quotation marks omitted). Therefore, the Court dismisses Count VI of the Complaint.[10]

### 2. Federal Food, Drug and Cosmetics Act

In Count III of the Complaint, plaintiff seeks to assert a claim for violations of Section 301(b) of the Federal Food, Drug and Cosmetic Act ("FDCA"), codified at 21 U.S.C. § 331(b). However, plaintiff has failed to cite, and the Court is not aware

---

[9] In the Complaint, plaintiff cites to the Securities Act in seeking to assert a claim for violations of 17 C.F.R. § 240.12g-2. Contrary to plaintiff's presentation, Rule 12g-2 has been promulgated by the SEC under the Exchange Act, not the Securities Act. See 17 C.F.R. § 240.0-1(a) ("As used in the rules and regulations in this part, prescribed by the Commission pursuant to Title I of the Securities Exchange Act of 1934"). This discrepancy, however, is immaterial in resolving this motion.

[10] In so far as the substance of the claim plaintiff seeks to assert under Rule 12g-2 is based on the defendant's alleged failure to register the shares of defendant's stock that she purportedly acquired in exchange of her investment, plaintiff would have to assert such a claim under Section 12(a)(1) of the Securities Act. However, the Court has already concluded that any claim under that Section of the Securities Act based on her alleged investment in defendant would be time-barred. See supra at 9-10.

of, any provision in the FDCA or a legal authority that provides for a private right of action for violations of FDCA's provisions. See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1113 (2d Cir. 1997)(holding that "no . . . private right of action exists" to enforce violations of FDCA). Therefore, the Court dismisses Count III of the Complaint.

3. Federal Fair Packaging and Labelling Act

In Count IV of the Complaint, plaintiff seeks to assert a claim for violations of Section 4 of the Fair Packaging and Labeling Act ("FPLA"), codified at 15 U.S.C. § 1453. Again, plaintiff has failed to cite, and the Court is not aware of, any provision in the FPLA or a legal authority that provides plaintiff a private right of action for violations of FPLA's provisions. See Reider v. Immaculate Baking Co., No. 18 Civ. 1085, 2018 WL 6930890, at *2 n.2 (C.D. Cal. Nov. 8, 2018)("The FPLA does not provide a private right of action."). Therefore, the Court dismisses Count IV of the Complaint.

4. Lanham Act

In Count V of the Complaint, plaintiff seeks to assert a false advertising claim under Section 43(a)(1) of the Lanham Act.[11] "To

---

[11] In the Complaint, plaintiff cites to 15 U.S.C. § 52 in an endeavor to assert a false advertising claim under the Lanham Act. In fact, 15 U.S.C. § 52 is part of the Federal Trade Commission Act, which does not provide for a private right of action for a violation of the Act's provisions. See Alfred Dunhill Ltd. v. Interstate Cigar Co., Inc., 499 F.2d 232, 237 (2d Cir. 1974)("[T]he provisions of the Federal Trade Commission Act may be enforced only by the Federal Trade Commission.") Apparently, recognizing her error, plaintiff in her motion papers refers to Section 43(a)(1) of the Lanham Act as

12

have standing for a Lanham Act false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury." Telecom Intern. Am., Ltd. v. AT&T Corp., 280 F.3d 175, 197 (2d Cir. 2001). Therefore, to plead her standing to assert a claim under Section 43(a) of the Lanham Act, "a plaintiff must allege an injury to a commercial interest in reputation or sales." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 131-32 (2014). "A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act." Id. at 132. "Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the Act's aegis." Id.

In the Complaint, plaintiff alleges that defendant's false advertising of its herbal supplement products caused two injuries: (1) purchasing $4,000 worth of herbal supplement products, and (2) making an investment in defendant, the purported manufacturer of those products. Neither assertion is sufficient to maintain an action under the Lanham Act. The first alleged injury does not give plaintiff standing to assert a claim under Section 43(a) of the Lanham Act because, based on such injury, plaintiff is suing only in her status as a consumer of defendant's products. The

---

the basis for her false advertising claim. We will treat the Complaint as so amended.

13

second alleged injury is also insufficient because it only pertains to the value of plaintiff's investment in defendants and is not in any way about the plaintiff's reputation or sales within the marketplace as a competitor. The Complaint is completely devoid of allegations suggesting that plaintiff sells any product that competes with the defendant's herbal supplement products or otherwise competes with defendant in any market. Therefore, plaintiff has failed to adequately plead standing to assert a false advertising claim under the Lanham Act, and the Court dismisses Count V of the Complaint for lack of standing.

### 5. Diversity Jurisdiction

Defendant argues that, having dismissed all of the plaintiff's claims purportedly brought under federal statutory law, the Court does not have original jurisdiction over the remaining state law claims because there is no diversity of citizenship between the parties.

"The burden of persuasion for establishing diversity jurisdiction . . . remains on the party asserting it." Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010). "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000). "For purposes of diversity jurisdiction, the relevant domicile is the parties' domicile at the time the complaint was

filed." Van Bushirk v. United Grp. Of Companies, Inc., 935 F.3d 49, 53 (2d Cir. 2019).

The parties do not dispute that defendant is a New York corporation, but defendant disputes plaintiff's assertion of New Jersey citizenship. Even were we to accept as true the allegations in the Complaint, it is not at all clear whether the plaintiff's domicile was New Jersey at the time the Complaint was filed. Except for a bare assertion that plaintiff is "a citizen of New Jersey," compl. ¶ 3, the only allegation in the Complaint that could support her assertion of New Jersey citizenship is that she owned a house in New Jersey up until July 2016. Compl. ¶ 42.

In response to defendant's challenge to plaintiff's invocation of diversity jurisdiction, plaintiff submitted the first page of her federal income tax return for 2018 that shows a New Jersey address. Pl.'s Opp'n, Ex. A. (ECF No. 20). The page, however, does not specify the filing date and lacks the plaintiff's signature. Id. Notably, plaintiff has not submitted a complete, signed copy of her 2018 tax return or any other document to support her assertion of New Jersey citizenship even after being presented with the defendant's contention that the page is insufficient to support diversity jurisdiction due to the absence of plaintiff's signature. Def.'s Reply (ECF No. 23) at 4.

The absence of any additional submission by plaintiff is particularly significant given the simple burden to establish an

15

individual's citizenship. Documents readily available in plaintiff's everyday life, such as rent bills or electricity bills, would have supported her assertion of New Jersey citizenship, at least in some degree. However, the only document plaintiff has submitted so far in this action is an unsigned and undated copy of the first two pages of her 2018 federal tax return. Because plaintiff could have filed her federal tax return for 2018 at any time between January 1, 2019 and April 15, 2019, even the pages she submitted do not provide any meaningful support to her assertion of New Jersey citizenship as of February 22, 2019, the date she filed the Complaint. In sum, before the Court is a complete dearth of evidence to resolve the plaintiff's domicile at the time the Complaint was filed. Under the circumstances, the Court concludes that plaintiff has failed to carry her burden of establishing diversity jurisdiction.

6. Exercise of Supplemental Jurisdiction

Having found that plaintiff may neither rely on diversity or federal question jurisdiction, the only basis for the Court to exercise jurisdiction over plaintiff's remaining state law claims would be supplemental jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" where "the district court has dismissed all claims over which it has original jurisdiction." See also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7

(1988)("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). Here, we decline to exercise supplemental jurisdiction over plaintiff's remaining claims brought under state law and dismiss the Complaint in its entirety.[12]

### III. Conclusion

For the foregoing reasons, the Court grants defendant's motion and dismisses the Complaint in its entirety. The Clerk of Court is respectfully directed to close the case. This Memorandum and Order resolves ECF Docket entry No. 16.

**SO ORDERED.**

Dated:   New York, New York
         January 28, 2020

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[12]  In declining to exercise supplemental jurisdiction over plaintiff's claims under state law, the Court expresses no view as to the viability of those claims.

17